UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

     v.                         CASE NO. 8:20-cr-401-WFJ-AAS

JIMMY WAYNE HAMMONDS
a/k/a "The Monkey Whisperer"

## UNITED STATES' RESPONSE TO HAMMONDS' MOTION TO SUPPRESS

The United States of America responds as directed by this Court to Jimmy Wayne Hammonds' motion to suppress and request for evidentiary hearing, as well as his motion to compel attendance of key defense witness. Docs. 32, 37, 40. This Court should deny Hammonds' motions.

### I.    Background

For years, Hammonds ran a monkey breeding business, The Monkey Whisperer, LLC. In addition to licensed money breeding activities, he frequently sold monkeys on the black market. This case springs from Hammonds' unlawful sales of endangered or otherwise regulated monkeys across the country.

The investigation into Hammonds' conduct stemmed from multiple, independent information sources indicating that he was involved in unlawful wildlife trafficking. One source was an investigation by the California Department of Fish and Wildlife ("CDFW") and the Florida Fish and Wildlife Conservation Commission ("FFWCC"), centering on a 2017 sale of a capuchin monkey to a

California-based celebrity. *See* Doc. 1 (Counts One and Two). As part of that investigation, the FFWCC obtained a warrant to search Hammonds' phone from a state judge in Manatee County, Florida.[1] In September 2018, law-enforcement officers searched Hammonds' phone in a manner authorized by the search warrant and seized evidence pursuant to that warrant from the phone's "notes" application.[2] *See* Attachment A. Those records led, in part, to the investigation of an additional unlawful sale to an individual in South Carolina, whom Hammonds later encouraged in a recorded call to lie to law-enforcement officers. *See* Doc. 1 (Counts Fix and Six).

Another independent source of information came from an August 2017 tip submitted by Hammonds' competitor. The tip—which predated the search of Hammonds phone by more than a year—stated that Hammonds had unlawfully sold cotton-top tamarin monkeys to purchasers in Wisconsin and Alabama. A subsequent investigation corroborated these allegations, including interviews with the purchasers themselves. *See* Doc. 1 (Counts Three and Four).

In December 2020, a grand jury in the Middle District of Florida charged Hammonds with having conspired to violate the Lacey Act, in violation of 18 U.S.C.

---

[1] Florida Administrative Code 68A-6.008(2) makes it unlawful to "to buy, sell, or transfer any wildlife to or from an unpermitted entity within Florida." California Code of Regulations § 671 and California Fish and Game Code § 2118 make it unlawful to import, transport, or possess listed categories of animals (including primates) without a permit.

[2] The United States has not attached the Cellebrite "notes" extraction from Hammonds' phone because it might contain private or sensitive information. But the United States will file the extraction under seal if granted leave to do so by this Court.

§ 371, Lacy Act Trafficking, in violation of 16 U.S.C. §§ 3372(a)(2) and 3373(d)(1)(B) and 18 U.S.C. § 2, Lacey Act False Record, in violation of 16 U.S.C. §§ 3372(d)(2) and 3373(d)(3)(A)(ii), and 18 U.S.C. § 2, two violations of the Endangered Species Act, in violation of 16 U.S.C. §§ 1538(a)(1), 1540(b)(1) and 18 U.S.C. § 2, and witness tampering, in violation of 18 U.S.C. § 1512(b)(3). Doc. 1.

In November 2021, Hammonds moved to suppress unidentified evidence seized from Hammonds' phone. Doc. 32. Hammonds subsequently moved to compel the United States to assist him subpoena witnesses for a related evidentiary hearing. Doc. 40. This Court directed the United States to respond. Doc. 37, 41. For the reasons that follow, this Court should deny Hammonds' motions.

## II.    Analysis

### A. Standard of Review and Guiding Principles

The United States Supreme Court has consistently and repeatedly indicated in its opinions over the years that a low level of scrutiny should be applied to reviewing a judge's probable cause determinations in search warrants. *Illinois v. Gates*, 462 U.S. 213, 236–37 (1983); *Ornelas v. United States*, 517 U.S. 690, 699 (1996). This level of scrutiny incentivizes police officers to use the warrant process. *Gates*, 462 U.S. at 236; *United States v. Ventresca,* 380 U.S. 102, 105–07 (1965). Reasonable minds may differ on the question whether a particular affidavit establishes probable cause, so a preference for warrants is best effectuated by according "great deference" to a judge's determination. *United States v. Leon*, 468 U.S. 897, 914 (1984); *Spinelli v. United States*,

393 U.S. 410, 419 (1969). This standard of review forecloses an endless after-the-fact

debate about probable cause determinations. As stated by the Supreme Court:

> [W]e have repeatedly said that after-the-fact scrutiny by courts of the
> sufficiency of an affidavit should not take the form of *de novo* review.
> A magistrate's 'determination of probable cause should be paid great
> deference by reviewing courts.' 'A grudging or negative attitude by
> reviewing courts toward warrants' is inconsistent with the Fourth
> Amendment's strong preference for searches conducted pursuant to a
> warrant…'courts should not invalidate…warrant[s] by interpreting
> affidavit[s] in a hypertechnical, rather than a commonsense, manner.'

*Gates*, 462 U.S. at 236 (cleaned up). Applying this deferential standard, *Gates*

explained that so long as the judge had a "substantial basis for conclud[ing]" that a

search would uncover evidence of wrongdoing, the Fourth Amendment requires no

more. *Id*. at 236. In doubtful or marginal cases, the existence of probable cause

should be determined largely by the preference accorded to warrants. *United States v.*

*Ventresca*, 380 U.S. 102, 106–09. (1965).

When moving to suppress evidence of a challenged search or seizure, the

defendant bears the burden of showing that his Fourth Amendment rights have been

violated. *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978).

B.  Overbreadth

Hammonds first argues that the September 2018 search warrant issued by a

judge in Manatee County, Florida, is unconstitutionally overbroad because it permits

law-enforcement officers to search Hammonds' devices and seize evidence "from

January 2017 to present." Doc. 32. This period, Hammonds claims, is unsupported

by probable cause because it seeks data from several months before a particular illicit

monkey sale and predates that monkey's September 2017 birth. Not so. The seizure period is well-supported by the search warrant affidavit and, in any event, the remedy Hammonds seeks is foreclosed by application of the good faith doctrine.

The admissibility in federal court of the products of state searches and seizures is controlled by federal law. *E.g., United States v. De La Rosa,* 922 F.2d 675, 678–79 (11th Cir.1991) ("In determining whether there has been an unreasonable search and seizure by state officers a federal court must make an independent inquiry…The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed.") (internal quotation and citation omitted); *United States v. Clay*, 355 F.3d 1281, 1283 (11th Cir. 2004). Under the Fourth Amendment, every search or seizure by a law-enforcement officer must be reasonable. In general, a search is unreasonable unless it is based on probable cause and executed pursuant to a warrant. *Katz v. United States*, 389 U.S. 347, 357 (1967).

The term "probable cause" is not perfectly definable. *Ornelas*, 517 U.S. at 695. It is a commonsense, nontechnical conception that deals with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gates*, 462 U.S. at 231 (internal quotation marks omitted). As such, the standard is "not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. Probable cause exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief

that contraband or evidence of a crime will be found. *E.g.*, *Gates*, 462 U.S. at 238; *Brinegar v. United States*, 338 U.S. 160, 175 (1949). It is not a "finely-tuned standard[]" such as "proof by preponderance," but a fluid concept that takes substantive content from the particular contexts in which the standard is being assessed. *Gates*, 462 U.S. at 232; *Brinegar*, 338 U.S. at 175 ("The standard of proof [for probable cause] is ... correlative to what must be proved"); *Ker v. California*, 374 U.S. 23, 33 (1963) ("This Cour[t] [has a] long-established recognition that standards of reasonableness under the Fourth Amendment are not susceptible of Procrustean application"; "[e]ach case is to be decided on its own facts and circumstances" (internal quotation marks omitted)); *Terry v. Ohio,* 392 U.S. 1, 29, (1968) (Fourth Amendment's limitations "will have to be developed in the concrete factual circumstances of individual cases").

A search warrant, therefore, may be based on hearsay of the affiant as long as the judge is informed of some of the underlying circumstances supporting the affiant's conclusion that the hearsay is credible. *Ventresca*, 380 U.S. at 745–46. Yet a "bare bones" affidavit or one based wholly on conclusory statements is not adequate. *Gates*, 462 U.S. at 239; *United States v. Marmolejo*, 89 F.3d 1185, 1198 (5th Cir. 1996) (affidavit containing only conclusions and lacking facts and circumstances from which a magistrate can independently determine probable cause is "bare bones.").

In evaluating the legal sufficiency of a warrant, the duty of a reviewing court is simply to ensure that the issuing judge had a substantial basis for concluding that

probable cause existed. *Gates*, 462 U.S. at 238–39. A nexus between objects to be seized and the place to be searched is established when the probable cause circumstances set out in the affidavit would justify belief by a person of reasonable caution that the objects to be seized would probably be found at the place to be searched. *United States v. Hargas*, 128 F.3d 1358, 1362 (10th Cir. 1997).

Hammonds cannot satisfy his burden to establish that the search warrant was not supported by probable cause. The September 26, 2018 state search warrant authorized forensic examination of Hammonds' phone for, among other things, the following: (1) "[a]ll communication content…from January 2017 to present…"; (2) "[a]ll location data from 2017 to present…;" (3) "all photographic/video/audio data and associated metadata," (4) "all internet history from 2017 to present;" and (5) "[a]ll financial information." Attachment A at 1–3. Upon searching Hammonds' phone, agents discovered and seized records from the phone's "notes" application, which contained, among other things, financial information from black market monkey transactions occurring between 2013 to September 26, 2018 (the notes seem to have been systematically and contemporaneously recorded).[3]

Hammonds asserts that the January 2017 date range is not supported by the attendant affidavits because one of the monkeys at issue in the investigation was born

---

[3] This category of documents appears to be the sole probative evidence seized from Hammonds' phone. A Cellebrite Extraction Report produced in discovery captures all "notes" data stretching back to 2013. But, to date, investigators have not relied on records before January 2017 to further the investigation. Hammonds' motion does not specifically identify what evidence he deems at issue. Doc. 32.

and sold around September 2017. But even a cursory review of the supporting affidavits reveals that his assertion is meritless.

Hammonds' arguments largely follow from a false premise. The investigation detailed in the affidavits is not limited to a singular illicit monkey transaction in September/October 2017. The affidavits (and ensuing prosecution) center on a series of conspiracies involving a black-market, years-long scheme run by Hammonds in Florida. The operative question, then, is whether the affidavits established probable cause that evidence, fruits, or instrumentalities of that scheme and its related conspiracies (including financial/transactional data) would be found in Hammonds' phone. They do.

The search warrant was supported by two affidavits. The first, sworn to by FFWCC Investigator Robert O'Horo, incorporated the second affidavit, sworn to by California Department of Fish and Wildlife ("CDFL") Investigator Matt Gonzalez. Attachment A at 4, 5–6. The affidavits, at various points, describe Hammonds as having engaged in a protracted pattern, practice, and scheme violating Florida law, California law, and federal law stretching back years—perhaps as far back as 2012.

The affidavits broadly provided that, based on training and experience, black market wildlife trafficking almost exclusively involves conspiratorial schemes. Attachment A at 7–8. The affidavits also stressed the importance of a broad search of the device's communication data (from January 2017 to September 2018) to understand context and intent of the communicating parties. Attachment A at 20–21.

8

They further highlighted that, based on training and experience, conspiracies are associations of individuals, adding that additional evidence helps establish conspiratorial relationships. Attachment A at 22–23.

More specifically, the affidavits characterized Hammonds' Monkey Whisperer as a legal business containing a black-market side-operation. Attachment A at 19. For 22 pages, the affidavits offered extremely detailed facts characterizing the Monkey Whisperer enterprise as having run an illicit scheme involving repeated conspiratorial business transactions. They detailed that Hammonds conspired to import restricted monkey species into California in August and October of 2017, including accusations from Hammonds' former customers and evidence of Hammonds specific intent to illegally send regulated monkeys to California. Attachment A at 11–12, 21. The affidavits stated that Hammonds would face Florida criminal changes for having provided false statements and false business records during FFWCC inspections of his business, and for having transferred a capuchin monkey to an unlicensed transporter. Attachment A at 4, 12. They also described interviews with former customers and information suggesting that they had lied to investigators about their dealings with Hammonds. Attachment A at 15.

The affidavits further provided information regarding the duration of Hammonds' scheme and its related conspiracies. For example, they detailed a half-dozen sales of capuchin monkeys in 2017 alone. Attachment A at 11. They also described links to other illicit or possibly illicit transactions with associates of

Hammonds and their associates (often friends or relatives), stretching back to 2013 and 2014—even providing specific facts corroborating those links. Attachment A at 17–19. What is more, the affidavits incorporated Hammonds' 2012 criminal history relating to the sale/transfer of wildlife, further buttressing the proposition that Hammonds was engaged in a long-standing pattern and practice of illicit wildlife trafficking. Attachment A at 12.

The affidavits additionally provided the court with specific information linking Hammonds' cell phone to his legal and illegal business practices. And, they established that, based on the officers' training and experience, search warrants for cellular devices often uncover the conspiratorial nature of illegal wildlife trading. Attachment A at 8.

Turing specifically to Hammonds' phone, the affidavits detailed his using the phone daily to advertise and operate his FFWCC-regulated Monkey Whisperer business. Attachment A at 5, 20. They also detailed specific usage associated with likely criminal conduct. For example, the affidavits discussed frequent calls— sometimes over 90 calls a day—to a variety of persons, many of whom were "suspected co-conspirators." Attachment A at 5. The affidavits also detailed phone records showing Hammonds using his cellphone to communicate for 186 minutes over a one-year period with a likely co-conspirator to the September 2017 capuchin monkey transaction (now charged criminal conduct). Attachment A at 18; Doc. 1. They also mentioned Hammonds' phone having made calls to persons associated

with that transaction on the days leading up to the monkey's birth in September 2017. Attachment A at 19; *see also* Doc. 1 (Counts One and Two). Indeed, the affidavits expressly concluded that Hammonds' phone was likely to contain evidence of a conspiracy to violate Florida, California, and federal law. Attachment at 19.

Illicit business practices or schemes normally involve a pattern of repeated conduct. Conspiracies to conduct a singular, illicit transaction, by definition, precede that transaction. It is thus eminently reasonable that the issuing judge would approve a search for communications records and other financial information predating the September 2017 monkey transaction, especially when such data falls well-within what appears to be years of a broader black-market wildlife operation. *See United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir. 1982) (highlighting that white-collar crime requires reading the warrant with practical flexibility that entails an awareness of the difficulty of piecing together the "paper puzzle."). Probable cause therefore existed to search Hammonds' phone for all related financial information, as well as for communications content from January 2017 through warrant's execution in September 2018. *See* Attachment A at 1–3.

C. Particularity

Hammonds further asserts that the warrant is deficient because it is not sufficiently particularized. He posits two ways in which the warrant fails in this regard. First, he submits that the warrant fails to specify the crime committed. Second, he asserts that it does not contain objective standards for law enforcement to

differentiate between criminal items and non-criminal items, characterizing the warrant as a "general warrant." Both arguments are wholly without merit and, in any event, the relief he seeks is foreclosed by the good faith doctrine.

The Fourth Amendment prohibits general warrants. A general warrant allows for the general, exploratory rummaging in a person's belongings. *Andresen v. Maryland*, 427 U.S. 463, 480 (1976). The Fourth Amendment addresses this problem by requiring a particular description of the items to be seized. *Id.*; *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized. *Wuagneux*, 683 F.2d at 1348; *United States v. Santarelli*, 778 F.2d 609, 614 (11th Cir. 1985).[4]

The particularity requirement of the Fourth Amendment must be applied in a practical and flexible manner and must consider the nature of the items to be seized and the complexity of the matter under investigation. *United States v. Sawyer*, 799 F.2d 1494, 1508 (11th Cir. 1986). A description of property will be acceptable if it is as specific as the circumstances and nature of the activity under investigation permit. *See, e.g., Wuagneux*, 683 F.2d at 1349. In a complex criminal investigation, the warrant may require the taking of several evidentiary items, the incriminating nature

---

[4] Hammond's motion incorporates the famous quote from *Marron v. United States*, 275 U.S. 192, 196 (1927): "As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." Doc. 32 at 7. But the Eleventh Circuit has highlighted that this admonition cannot and has not been taken literally. *See Wuagneux*, 683 F.2d at 1349 n.4. If it were, no search would be possible.

of which might not be apparent when considered in isolation. *Andresen*, 427 U.S. at 481 n. 10. This is especially true where the investigation targets "pervasive schemes to defraud" or other illicit business schemes. *See*, *e.g.*, *United States v. Sawyer*, 799 F.2d 1494, 1508 (11th Cir. 1986); *United States v. Majors*, 196 F.3d 1206 (11th Cir. 1999).

The search warrant here sufficiently identified the crimes at issue. The search warrant order contained an express reference to Florida Statute § 933.02(3) and (4), which explicitly authorizes search warrants for evidence of felonies and when property is being held or possessed "[i]n violation of fish and game laws." *See* Fla. Stat. § 933.02(4)(b); Attachment A at 1. The warrant also expressly found probable cause that Hammonds' phone "contained evidence of a crime as prescribed in the Affidavits." Attachment A at 1–2. The use of the plural form—affidavits—clearly indicates that the warrant contemplated and was granted in conjunction with the two supporting affidavits. *See* Attachment A at 1.

The attached affidavits, in turn, referred to Hammonds having violated Florida crimes and regulations, including false official statements, knowingly proffering false business records, releasing a protected monkey to an unlicensed transporter, and a "conspiracy to violate Florida Fish and Wildlife Laws" relating to capuchin monkeys. Attachment A at 4, 12, 18. The affidavits also expressly referenced several interrelated and directly applicable acts, statutes, and regulations, including the Lacey Act (Lacy Act Conspiracy), California Fish and Game Code § 2118, California Code of Regulations, Title 14, Section 671, and California Penal

Code 182 (conspiracies). Attachment A at 12, 16–18, 21.

Although the state warrant lacks the technical specificity and organization often found in federal search warrants, the affidavits' multiple references to state and federal crimes sufficiently identity the criminal conduct and evidence at issue. Yet Hammonds protests, appealing to extra-circuit decisions in support of the proposition that the attached warrants cannot alone be used cure ambiguity or otherwise inform this Court's understanding crimes outlined in the warrant. In the Second Circuit Court of Appeals, for example, to be used in such a manner, the affidavit must be both attached and incorporated by reference in a manner that guides the executing officer concerning the search's scope. *E.g., United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992). The search warrant here satisfies this standard—the warrant's face expressly refers to the crimes detailed in the affidavits as being the subject of the search, and the affidavits were attached to the warrant. *See* Attachment A at 1–3.

In any event, the incorporation rule in the Eleventh Circuit Court of Appeals is a far less exacting than the extra-circuit law upon which Hammonds relies. *See Wuagneux*, 683 F.2d at 1351 n.6; *United States v. Maxwell*, 920 F.2d 1028, 1032 n.2 (D.C. Cir. 1990) (recognizing that some Circuits, including the Eleventh Circuit, apply a relaxed incorporation-by-reference standard). Here, an attached affidavit referencing the crimes at issue, by itself, is sufficient to satisfy the incorporation rule. *See Martinelli*, 454 F.3d 1300, 1308 (11th Cir. 2006) ("When affidavits are attached to

14

a warrant, we will consider the affiant's statements in determining whether the warrant sufficiently identifies the crimes that were allegedly committed."); *Wuagneux*, 683 F.2d at 1351 n.6. Indeed, the incorporation rule has been applied to cure ambiguity in this Circuit even where it was not attached to the accompanying affidavit nor incorporated by express reference; for example, when it was merely brought to the search site and used to educate the search agents. *Wuagneux*, 683 F.2d 1343, 1351 n.6 (11th Cir. 1982). This is so, because the incorporated-by-reference and attachment requirements are ultimately intended to ensure "that both the searchers and the person whose premises are to be searched are informed of the scope of the searchers' authority." *Wuagneux*, 683 F.2d at 1351 n.6 (citing United States v. *Haydel*, 649 F.2d 1152, 1153 (5th Cir. 1981)).

Here, the warrant's title cited the Florida Statutes subsection addressing fish and game warrants, the affidavits (though under seal) were attached to the warrant application, the warrant expressly referred to "the crime as prescribed in the [a]ffidavits," and the search and seizure was executed by the swearing officer who applied for the warrant. *See* Attachment A at 1–6. The incorporation rule thus functions to cure any ambiguity that the warrant might otherwise have with respect to identifying the crimes at issue. *See, e.g.*, *Martinelli*, 454 F.3d 1300, 1308 (11th Cir. 2006) (holding that attached affidavit's generic references to "fraud" and describing fraudulent conduct sufficiently identified the crime at issue). This Court should thus reject Hammonds' contention that the warrant is deficient for failing identify a crime.

15

This Court should likewise reject Hammonds' argument that the search warrant lacked sufficient particularly with respect to the things to be searched and seized. Both the affidavit and warrant itself provided sufficient detail in this regard. As detailed above, the warrant preamble expressly described evidence of crimes "as prescribed in the Affidavits," that is, illicit primate sales and trafficking. *See* Attachment A at 1. The warrant then authorized the digital forensic examination of Hammonds' mobile phone associated with his phone number, enumerating several categories of evidence included in the court's authorization. Attachment A at 1–2 (referencing communications data, location data, internet history, media, financial information, and indicial of ownership and control). The warrant also authorized an "off-site search of the hardware for the evidence described" and the use of outside experts to "employ whatever data analysis techniques appear necessary to locate and retrieve the evidence described." Attachment A at 2. The warrant further authorized the sharing of information with California law-enforcement officers. Attachment A at 2. Finally, the warrant also ordered officers to "seal," not use, and not further review or disclose information "unrelated to the objective of the warrant." Attachment A at 3.

The warrant's authorization tracks the guidelines and authority requested in the supporting affidavits; detailing the purpose of the warrant (to seize the phone, search and forensically examine it, and seize and retain evidence), a request to allow outside experts to participate in the examination, a request to share information with

California law enforcement officers, and a promise to seal non-relevant information and data. Attachment A at 9, 23, 25.

This is a far cry from a "general warrant." Courts have approved warrants with descriptions of items to be seized which were much more general, broad, or ambiguous than any of the descriptions in this case. For example, in *Andresen*, a false pretenses case, the warrant permitted the seizure of particular documents "together with other fruits, instrumentalities and evidence of crime at this [time] unknown." 427 U.S. at 479. The Supreme Court concluded that the phrase had to be read to authorize only the seizure of evidence relating to the crime of false pretenses as it pertained to a particular piece of property. Nevertheless, the Supreme Court upheld a warrant allowing for the seizure of unspecified documents. Similarly, in *Wuagneux*, the warrant permitted the seizure of records of "the receipt and disbursement of kickback funds." 683 F.2d at 1350. The Eleventh Circuit determined that although the phrase was ambiguous, the ambiguity was eliminated by reference to the affidavit supporting the warrant. Finally, in *Santarelli*, a loansharking case, the warrant permitted the seizure of "all property constituting evidence of loansharking." 778 F.2d at 614. The Eleventh Circuit held that the description was as particular as the circumstances would allow. *Id*.; *see also United States v. Weinstein*, 762 F.2d 1522, 1531–32 n.4 (11th Cir. 1985) (warrant authorizing search of company for typical business records was legally sufficient and was as specific as circumstances would permit).

Hammonds resorts to two extra-circuit cases, neither of which address digital evidence stored on a personal computing device. His appeal to *In re Grand Jury Investigation Concerning Solid State Devices, Inc.,* is unavailing. *See* 130 F.3d 853 (9th Cir. 1997). That case dealt not with suppression but with the return of property. *Id.* at 857 n.2. Moreover, the decision involved a generalized seizure of all business records relating to government semiconductor supply programs, within an unsupported five-year date range. *Id.* at 855. The court held that the government had failed to substantiate the date range and had also failed to satisfy that Circuit's requirement that a general seizure of a business's records be supported by probable cause that entire business was pervaded by fraud. Hammonds' resort to *United States v. Fuccillo* is likewise inapposite. *See* 808 F.2d 173, 174 (1st Cir. 1987). In *Fuccillo*, a single affidavit was used in three search warrants for three clothing warehouses. The warrant authorized seizure of essentially all clothing in the warehouses, so long as they were "contraband and evidence of a violation of [18 U.S.C. § 659]." *Id.* at 174. In three sweeping searches, agents removed large swaths of clothing from the warehouses, and in one warehouse seized its entire contents. *Id.*

These two decades-old cases are factually distinguishable from the search of a singular mobile phone used to advertise and run an illicit side-business. Moreover, neither binds this court. The descriptions of the items to be seized in the Hammonds' phone warrant were much more specific and detailed than those warrants upheld in *Andresen*, *Wuagneux*, and *Santarelli*, decisions which do bind this Court. The

18

warrant's preamble references the crimes detailed in the affidavits, before setting forth a list of specific categories of items to be seized, proscribing the manner of seizure, and ordering that data not pertinent to the "objective of the warrant" be protected. *See* Attachment A at 1–3. Most categories included date ranges. The category at issue not containing temporal parameters contained a subject matter limitation—financial information. Attachment A at 1–2; *see also United States v. Slocum*, 708 F.2d 587, 603–04 (11th Cir. 1983) (absence of dates to guide the agent's search for certain records does not transform the warrant into a general warrant).

A practical and flexible application of the warrant and its affidavits does not call for the rigid and disjointed reading that Hammonds invites this Court to engage in. *See Sawyer*, 799 F.2d at 1508. A wholistic, plain reading of the warrant and affidavits would enable a searcher to reasonably ascertain and identify things to be seized: evidence of a black-market primate sales and trafficking scheme. *See Wuagneux*, 683 F.2d at 1348. The warrant for Hammonds' phone and accompanying affidavit thus satisfies the Fourth Amendment's particularity standards.

> D. <u>Execution</u>

Hammonds also contends that his rights were violated by the warrant's "execution." Doc. 32. It is not clear whether Hammonds is merely contending that the officers violated his Fourth Amendment rights by faithfully executing a constitutionally deficient warrant (addressed above), or whether he also asserts that the manner of execution, search, and seizure fell outside the warrant's parameters.

To the extent that Hammonds presents the latter augment, it is wholly without merit.

First, Hammonds' claim in this regard fails because he does not specify what evidence the government obtained through the purported "rummaging." Doc. 32. As stated above, Hammonds bears the burden of establishing that his rights have been violated. *See*, *e.g.*, *Rakas,* at 439 U.S. at 130 n.1. Hammonds, as the party seeking suppression, "must go forward with specific evidence demonstrating taint." *See*, *e.g.*, *Wuagneux*, 683 F.2d at 1353. Yet he merely asserts that "[i]f the Court reviews the items seized…it will be clear that the search was a free-for-all in which 'all' documents were seized." Doc. 32 at 11. Hammonds curiously does not explain how the search was a rummaging, nor does he identify what documents were seized outside the warrant's terms.[5] More broadly, despite the United States having made three robust discovery productions before Hammonds' motion, his entire memorandum does not specify what pieces of evidence are at issue from the search and seizure.[6] Doc. 32. This Court should deny his motion on this ground alone.

In any event, the manner and scope of agents' executed search and seizure was not unreasonable. The crucial inquiry is always whether the search and seizures were reasonable under all the circumstances. *E.g.*, *Wuagneux*, 683 F.2d at 1352.

---

[5] By seeking total suppression of all items seized based on a claim that the search was executed in an unreasonable manner, Hammonds may be trying to avoid having to deal with another legal basis for seizures available to the government: the plain view doctrine. *See Coolidge v. New Hampshire*, 403 U.S. 446, 464–73 (1971). By not challenging the government's evidence on an item-by-item basis, the issue of whether the plain view doctrine applies to other "notes" or evidence located on Hammonds' phone does not arise.

[6] As detailed above, the only data seized and preserved from Hammonds' phone that undersigned counsel is aware of are records contained in the phone's "notes" application.

Many of the same considerations that govern the particularity the items to be seized also affect the reasonableness of the search itself. For example, the reasonableness of the search depends upon the complexity of the crime under investigation and the difficulty involved in determining whether certain documents reflect evidence of the crime. *Wuagneux*, 683 F.2d at 1352; *Sawyer*, 799 F.2d at 1509; *United States v. Schandl*, 947 F.2d 462, 465 (11th Cir. 1991). In a search warrant for records, agents may examine each record encountered to determine whether it falls within the warrant's parameters. *Slocum*, 708 F.2d at 602–04. This is so, because documents may be part of other documents, they may be commingled with other documents, or they may be labeled in such a way as to obscure their true character. *See, e.g., id.* (specified documents in a folder with other incriminating documents); *United States v. Hargus*, 128 F.3d 1358, 1363 (10th Cir. 1997) (specified documents in a filing cabinet commingled with personal items such as birthday cards); *United States v. Hill*, 19 F.3d 984, 987 (5th Cir. 1994) (specified documents in a different form than specified in warrant but considered the functional equivalent). The place to be searched might also be in shambles or there might be no filing system at all. *See, e.g., Slocum*, 708 F.2d at 601–02.

Here, as authorized by the warrant, investigators used forensic tools to search the phone and identified the "notes" application as containing what appeared to be contemporaneously recorded transactions and financial information involving monkey sales—some of which turned out to be illicit transactions. Agents were

authorized to search Hammonds' phone as extensively as reasonably required to locate objects of the search. *See*, *e.g.*, *Wuagneux*, 683 F.2d at 1352; *United States v. Lambert*, 887 F.2d 1568, 1572 (11th Cir. 1989). The agents' forensic mirroring, forensic perusal of Hammonds' phone contents, and the extraction of the "notes" application data for subsequent review was reasonable and appropriate under the circumstances. *See Slocum*, 708 F.2d at 604 (perusal may be needed to determine document's relevance); *Santarelli*, 778 F.2d at 616 (removal of documents for review may be appropriate).

Their execution is also well-supported by precedent. For example, in *Wuagneux*, the Eleventh Circuit held that it was reasonable for the agents to remove intact files, books, and folders, when a particular document within the file was identified as falling with the scope of the warrant. 683 F.2d at 1353. This was necessary, in part, because the pertinent documents would be identified primarily if not exclusively through analysis and synthesis of many documents. *Id* at 1352. To do otherwise "would substantially increase the time required to conduct the search, thereby aggravating the intrusiveness of the search." *Id*. at 1353. Similarly, in *Slocum*, the agents' examining documents dated less than two years before transactions detailed in the warrant to determine any relationship to transaction did not constitute an unlawful search. *See* 708 F.2d at 603–04.

That Hammonds' "notes" application contained financial and transactional information dating back to 2013, as well as other non-financial information, does not

render the entire search unreasonable. Many of these items are related to Hammonds' business and fall within other the warrant's other search and seizure provisions.[7] *See* Attachment A at 1–2. Seizing agents executing a search warrant may be required to interpret the warrant, but they are "not obliged to interpret it narrowly." *See United States v. Stiver*, 9 F.3d 298, 302 (3d Cir. 1993), quoting, *Hessel v. O'Hearn*, 977 F.2d 299, 302 (7th Cir. 1992). What is more, even assuming that some of these items fall outside the warrant's scope, their seizure does not imperil the entire seizure. Courts have consistently held that absent a "flagrant disregard" of the terms of the warrant, the seizure of items outside the scope of a warrant will not affect admissibility of items properly seized. *See, e.g., Wuagneux*, 683 F.2d at 1354 (11th Cir. 1982); *Hargus*, 128 F.3d at 1363 (only improperly seized evidence is suppressed); *United States v. Marmolejo*, 89 F.3d 1185, 1198n.24 (5th Cir. 1996) (noting that under the severability doctrine, evidence that is illegally seized has no effect on the admissibility of legally seized evidence).

The crimes under investigation in this case included illicit schemes and conspiratorial activity, and the search warrants called for the seizure of documentary evidence related to these activities. There is no rule requiring a seizure agent to know, in advance and with certainty, the exact contours of the scheme or conspiracy. Determining the formation, nature, scope and duration of a scheme or conspiracy is

---

[7] Other data in the singular Cellebrite Extraction Report that appears to be at issue include monkey diet information, draft advertisements for "The Monkey Whisperer," photographs of baby marmosets, and log-in information for online services.

part of every complex investigation, and these aspects are generally not known with precision at the time of the search. To the extent that Hammonds challenges the manner of the warrant's execution, this Court should deny his claim.

      E.  <u>Good faith</u>

Even if this Court were to find the search warrant to be constitutionally deficient—which it should not—this Court should not apply the exclusionary rule as Hammonds contends.

The Fourth Amendment is silent concerning the enforcement of the right to be free from unreasonable searches and seizures. *Davis v. United States*, 564 U.S. 229, 236, (2011). The Supreme Court accordingly created the exclusionary rule, a "prudential doctrine to compel respect for the constitutional guaranty." *Id.* (internal quotation marks omitted). The rule, though, is neither a personal right nor a right to "redress the injury occasioned by an unconstitutional search." *Id.* (internal quotation marks omitted). Rather, its purpose is to deter future Fourth Amendment violations, and its application is limited "to situations in which this purpose is thought most efficaciously served." *Id.*

The exclusionary rule thus does not bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral judge but ultimately found to lack probable cause. *Leon*, 468 U.S. at 922–926. There are only four situations in which this "good faith exception" does not apply: (1) the judge issued the warrant in reliance on a deliberately or recklessly false

affidavit; (2) the judge wholly abandoned their detached and neutral judicial role; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) the warrant was so facially deficient that a reasonable officer could not have believed it to be valid. *Leon*, 468 U.S. at 914–15; *United States v. Sheppard*, 468 U.S. 981 (1984); *United States v. Martin*, 297 F.3d 1308 (11th Cir. 2002); *United States v. Robinson,* 336 F.3d 1232 (11th Cir. 2003).

None of these four situations are present here. Indeed, Hammonds does not contend that any apply here. *See* Doc. 32. The affidavits undergirding the warrant were sworn by law-enforcement officers and there is no allegation that they deliberately or recklessly presented false affidavits or information. *See* Doc. 32; Attachment A at 4–26. Nor is there any allegation or evidence that Manatee County Judge Brian A. Iten failed to act in a neutral or detached manner. *See* Doc. 32. Finally, Hammonds does not contend—and the record does not support—that the affidavits were so lacking as to render a belief in the existence of probable cause entirely unreasonable, or so facially deficient that a reasonable officer could not have believed it to be valid. *See* Doc. 32; Attachment A at 4–26. Hammonds' contentions—that the warrant suffers Fourth Amendment infirmities due to its scope and lack of particularity—even if credited, therefore do not call for the exclusionary relief he seeks. *See Davis*, 564 U.S. 236; *Massachusetts v. Sheppard*, 468 U.S. 981, 991 (1984) (rule does not apply when warrant is invalid because judge forgot to make

clerical corrections to it); *cf. United States v. Accardo*, 749 F.2d 1477 (11th Cir. 1985) (holding that the good faith doctrine prevented suppression where warrant authorizing seizure of "all corporate records" failed to sufficiently identify objects to be seized).

The exclusionary rule's prophylactic purpose is not served by suppressing evidence from Hammonds' phone. The law-enforcement officers here followed the warrant process, submitted an extremely lengthy and detailed affidavit to a neutral judge, and executed the search within the boundaries of the warrant. If anything, the officers appear to have seized an incredibly narrow set of data from Hammonds' phone. There is no indication or allegation that they showed "deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *Davis*, 564 U.S. at 238.

Moreover, real deterrence value is only a necessary condition for the exclusionary rule to apply. *Davis*, 564 U.S. at 237. This Court's analysis must also account for the exclusionary rule's "substantial social costs," which include "ignor[ing] reliable, trustworthy evidence bearing on guilt or innocence" and swallowing the bitter pill of possibly setting a "criminal loose in the community without punishment." *Id*. Suppression is thus a method of "last resort," only appropriate where "the deterrence benefits of suppression must outweigh its heavy costs." *Id*.

Weighing the requisite deterrence value against the social cost in this case compels the conclusion that application of the exclusionary rule is unwarranted.

Against the backdrop of absolutely no deterrence value are the high social costs of suppressing evidence of illicit wildlife-trafficking transactions recovered from Hammonds' phone. Hammonds appears to be a repeat offender of black market, wildlife trafficking. Suppressing data from his phone would weaken the government's ability to prosecute criminal conduct outlined in the affidavits. What is more, it might imperil the prosecution of other, similar conduct and Hammonds' attempt to obstruct justice, as charged in Counts Five and Six of the Indictment.[8] *See United States v. Jones*, 697 F3d 989 (11th Cir. 1983) (identity of witness learned from piece of paper that exceeded search warrant not sufficiently attenuated); *United States v. Drosten*, 819 F.3d 1067 (11th Cir. 1987) (suppressing testimony of witnesses whose identities were discovered during unlawful search); *but see United States v. Ceccolini*, 435 U.S. 268 (1978) (live testimony obtained from illegal search sometimes not subject to the exclusionary rule); *see also* Doc. 1 (Counts Five and Six). With no deterrent benefit on one hand and high social costs on the other, this Court should not apply the exclusionary rule even if a Fourth Amendment violation occurred.

### F. Evidentiary Hearing

Hammonds requests that this Court hold an evidentiary hearing on his motion to suppress. Doc. 32. He also moves—under no rule of criminal procedure and citing

---

[8] We make this point merely to demonstrate the high social costs exacted by the suppression of data from Hammonds' phone. In doing so, we do not intend to waive the arguments that witnesses identified through data recovered from the phone are sufficiently attenuated fruit under *Brown v Illinois* and its progeny, subject to inevitable discovery, or that an independent source supports their identification. *See* 422 U.S. 590 (1975); *Nix v. Williams*, 467 U.S. 431 (1984).

no law—for this Court to compel the United States to assist him to serve subpoenas. Doc. 40. This Court should deny his requests for several reasons.

First, this Court cannot look outside the four corners of the warrant and affidavit to address Hammonds' motion, which appears to only challenge the warrant's probable cause sufficiency and particularity. *See Robinson*, 336 F.3d at 1296 ("In *Martin*, we indicated that, in order to determine whether an affidavit lacked sufficient indicia of probable cause, we must look only at the face of the affidavit."); *Martin*, 297 F.3d at 1313; *see also United States v. Lanzon*, 639 F.3d 1293, 1300 (11th Cir. 2011) (stating that the lawfulness of search is determined from objective standpoint, not the officer's subjective beliefs). And, although this Court may look outside the affidavit to determine whether an officer acted in good faith, it does not have to. This Court can determine good faith solely by consideration of the affidavits' contents. *See Robinson*, 336 F.3d at 1297. This is especially true here, where Hammonds' motion does not address good faith nor allege that any of the good faith doctrine's four exceptions are at issue. A full-blown evidentiary hearing that includes testimony of the swearing officers is therefore entirely unnecessary to resolve Hammonds' narrow claims.

Second, as the United States explained to counsel, a criminal defendant's subpoenas relating to federal law-enforcement officers must satisfy the respective agency's *Touhy* regulations, in this case the U.S. Department of the Interior. *See* 5 U.S.C. § 301; 43 C.F.R. §§ 2.280–2.290; *see also* U.S. Dept. of the Interior,

28

Instruction Mem. (available at https://www.blm.gov/policy/im-id-2015-047). State agencies, such as FFWCC and CDFW, have their own subpoena processes. *See* CDFW Service of Process Resources (available at https://wildlife.ca.gov/General-Counsel); FFWCC, General Order 18 (available at https://myfwc.com/media/3926/go18.pdf).

And finally, the relief that counsel seeks in his motion to compel (Doc. 40) is moot. Roughly one minute before Hammonds filed the motion, undersigned counsel emailed Hammonds mailing addresses for the CDFW and FFWCC.

This Court should deny Hammonds' request for an evidentiary hearing and should also deny his motion to compel the United States to assist him in subpoenaing witnesses (Doc. 40).

III.    **Conclusion**

For the foregoing reasons, this court should deny Hammonds' motion to suppress (Doc. 32) and his motion to compel information to subpoena witnesses (Doc. 40).

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:    /s/ *Francis D. Murray*
FRANCIS D. MURRAY
Assistant United States Attorney
Florida Bar No. 0108567
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:    (813) 274-6358
E-mail: francis.murray2@usdoj.gov

**U.S. v. Hammonds**                    **Case No. 8:20-cr-401-WFJ-AAS**

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2021, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to the following:

Gary Ostrow, Esq.

/s/ Francis D. Murray
Francis D. Murray
Assistant United States Attorney
Florida Bar No. 0108567
400 N. Tampa Street, Ste. 3200
Tampa, FL 33602
Phone:   (813) 274-6000
Fax:      (813) 274-6103
Email: francis.murray2@usdoj.gov