UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                                Case No: 8:20-cr-401-WFJ-AAS-1

JIMMY WAYNE HAMMONDS,

    Defendant.
_____/

## ORDER

This matter is before the Court on Defendant Jimmy Wayne Hammonds' Motion to Suppress Evidence, Dkt. 32, and Motion to Compel Attendance of Key Defense Witness, Dkt. 40. Defendant Hammonds argues evidence found on his cell phone should be excluded on Fourth Amendment grounds because the corresponding search warrant lacks probable cause and is unconstitutionally overbroad. Dkt. 32 at 2–3. Defendant Hammonds requests an evidentiary hearing for this motion and additionally seeks to compel the testimony of Lieutenant Matt Gonzalez from the California Department of Fish and Wildlife to support his suppression argument.

For the reasons explained below, the Court denies Defendant Hammonds' Motion to Suppress. The search warrant is not unconstitutional, and even if it were, the cell phone evidence should still be admitted under the good faith exception to

the exclusionary rule. Based on this holding, the Court additionally finds that an evidentiary hearing—and therefore the compelled testimony of Lt. Gonzalez—is unnecessary.

## BACKGROUND

Defendant Hammonds faces several criminal charges for his alleged involvement in the unlawful trafficking of endangered or otherwise regulated monkeys on the wildlife black market. Dkt. 1. The following facts are sourced from the affidavits that were attached to the search warrant at issue in this case:

In late 2017, the California Department of Fish and Wildlife received several complaints alleging famous R&B singer Chris Brown possessed a capuchin monkey at his residence in California. Dkt. 49 at 10. Possession of a capuchin monkey is illegal in California, and there are no licensed breeders of capuchin monkeys in the state. *Id.* at 17. Authorities seized the capuchin monkey from Mr. Brown's residence in January 2018. *Id.* at 10. The capuchin monkey was born on September 1, 2017, according to its health certificate. *Id.* at 15.

A few months later, Christine Brown—who is believed to be Chris Brown's aunt—filed a motion seeking return of the capuchin monkey into her possession. *Id.* at 10. She claimed the monkey belonged to her, as opposed to Chris Brown, and that the monkey was taken from her Nevada home by a third party to visit Chris Brown's home in California. *Id.* at 11. Christine Brown stated that she purchased

the monkey in October 2017 from Defendant Hammonds, who is a licensed monkey breeder in the state of Florida doing business as The Monkey Whisperer LLC. *Id.* at 5, 11.

This led authorities to inspect Defendant Hammonds and his business. *Id.* at 11. Hammonds told the investigators that he sold the capuchin monkey to Christine Brown in October 2017 for approximately $8,500. *Id*. at 11. However, Defendant Hammonds provided authorities with a financial record that seemingly had nothing to do with a sale to Ms. Brown—it was related to the sale of a monkey to an unrelated third party. *Id.* at 12. Defendant Hammonds stated that he likely communicated with Ms. Brown about the purchase through text and/or phone calls. *Id.* However, when authorities reviewed Defendant Hammonds' phone records pursuant to a subpoena, they did not see any calls between Defendant Hammonds and Christine Brown in the months when she supposedly purchased the capuchin monkey from him. *Id.* at 13. Additionally, Defendant Hammonds told authorities he used a Tennessee-based company named M&J Exotic Transport to transport the capuchin monkey from Florida to Christine Brown in Nevada. *Id.* at 11. But M&J Exotic Transport is not licensed to possess capuchin monkeys in the state of Florida, which means Defendant Hammonds may have violated several state and federal laws if he transferred the monkey to this company within the state. *Id.* at 12.

Upon further review of the financial records, authorities discovered that Defendant Hammonds cashed a check from Christopher Brown in October 2017 for $12,650. *Id.* at 14. These financial records also led authorities to believe that Defendant Hammonds illegally sold spider monkeys to famous rapper Swae Lee. *Id.*

Defendant Hammonds' cell phone records showed that he communicated several times with Jamal Rashid, a hip-hop producer known as Mally Mall who is believed to have illegally provided a capuchin monkey to singer Justin Bieber in 2013. *Id.* at 15–17. The communications between Defendant Hammonds and Mr. Rashid occurred right after the capuchin monkey's date of birth, as well as six days after authorities seized the capuchin monkey from Chris Brown's residence in California. *Id.* at 15–16. The two men communicated for more than 186 minutes over the course of one year, leading authorities to believe the two men were familiar with each other. *Id.* at 18. Mr. Rashid and Chris Brown are known associates. *Id.* at 19.

The cell phone records also showed that Defendant Hammonds communicated several times with Manuel Ortiz, a man who regularly performs work at Chris Brown's California residence. *Id.* Authorities believe Mr. Ortiz picked up the capuchin monkey from M&J Exotic Transport in Nevada and brought it to Chris Brown in California. *Id.* at 16. The calls between Defendant

Hammonds and Mr. Ortiz occurred around the same time the capuchin monkey was being transported, as well as the same day authorities seized the monkey from Chris Brown's residence. *Id.* The culmination of this evidence led authorities to believe Defendant Hammonds knew at the time of the sale that the capuchin monkey was destined for the state of California, in violation of the federal Lacey Act and several Florida and California fish and wildlife laws. *Id.* at 12, 18.

In September 2018, a Florida judge issued a warrant ordering the search and seizure of Defendant Hammonds' cell phone. *Id.* at 1–3. The warrant was based on two affidavits: (1) the affidavit of Lt. Matt Gonzalez from the California Department of Fish and Wildlife, from which this Court sources the factual background found in this opinion, *id.* at 7–26; and (2) the affidavit of Robert O'Horo, an investigator for the Florida Fish and Wildlife Conservation Commission who assisted Lt. Gonzalez with the investigation, *id.* at 4–6. The two affidavits stated there was probable cause to search Defendant Hammonds' cell phone based in part on the following evidence:

- The $12,650 financial transaction between Christopher Brown and Defendant Hammonds in October 2017—just weeks after the capuchin monkey's birth;

5

- The extended phone communications between Defendant Hammonds and Mr. Rashid, a known associate of Chris Brown who allegedly has a history of illegally transporting monkeys to celebrities;
- The inconsistencies in Defendant Hammonds' story that he sold the capuchin monkey to Christine Brown, including the lack of communication between the two according to the phone records;
- Defendant Hammonds' alleged transfer of the capuchin monkey to a company that is not licensed to transport capuchin monkeys in the state of Florida.

*Id.* at 4–26.

In the affidavits, both investigators explained why they believed Defendant Hammonds' cell phone contained evidence of his alleged crimes. Investigator O'Horo stated that he observed Defendant Hammonds use his cell phone several times during the investigation, that Defendant Hammonds advertised his cell phone number as a point of contact for The Monkey Whisperer LLC, and that the phone records showed a high volume of calls at all hours of the day. *Id.* at 5. According to Investigator O'Horo, there was probable cause to believe many of these calls involved suspected co-conspirators. *Id.* Lt. Gonzalez stated that wildlife traffickers frequently use their cell phones to conduct their illegal business. *Id.* at 19. Based on his training and experience, Lt. Gonzalez explained how different applications

of a cell phone may contain relevant evidence of illegal wildlife trafficking. *Id.* at 20–26.

Pursuant to the search warrant, officers searched Defendant Hammonds' cell phone and seized information from the "notes" application that allegedly documented black-market monkey transactions occurring from 2013 to 2018. Dkt. 48 at 7. Defendant Hammonds now moves to suppress the evidence seized from his cell phone, arguing the search violated his Fourth Amendment rights.[1] Dkt. 32. Hammonds requested an evidentiary hearing, which the Court originally set for January 11, 2022. Dkt. 38. Defendant Hammonds then moved to compel the attendance of Lt. Gonzalez at the evidentiary hearing. Dkt. 40. The Court continued the evidentiary hearing to February 16, 2022. Dkt. 51.

## LEGAL STANDARD

Search warrants must be supported by probable cause, which exists "when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999). An affidavit in support of a search warrant must "state facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched." *United States v.*

---

[1] Defendant Hammonds moves to suppress all evidence seized by virtue of this search warrant. Dkt. 32 at 2–3.

*Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) (citation omitted). Courts do not conduct a de novo determination of probable cause. *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). The reviewing court's role is "only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Id*. This is "a practical, commonsense decision," and courts are not to "interpret supporting affidavits in a hypertechnical manner." *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994).

"A warrant which fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally over broad." *United States v. Travers*, 233 F.3d 1327, 1329 (11th Cir. 2000). But "elaborate specificity" is not required. *United States v. Peagler*, 847 F.2d 756, 757 (11th Cir. 1988). A description in a warrant is constitutionally sufficient if "it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir. 1982). An affidavit incorporated into a warrant and attached to the warrant can cure ambiguity in the warrant itself. *United States v. Beckett*, 369 F. App'x 52, 57 (11th Cir. 2010).

Generally, a defendant moving to suppress evidence seized pursuant to a warrant bears the initial burdens of production and persuasion. *United States v. de*

*la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977) (citations omitted).[2] When analyzing the validity of a warrant, consideration may be given only to information brought to the attention of the issuing judge. *United States v. Lockett*, 674 F.2d 843, 845 (11th Cir. 1982).

## ANALYSIS

### I. The Motion To Suppress Is Denied.

#### A. The Search Warrant Is Not Unconstitutional.

Defendant Hammonds asserts three reasons why the search warrant is unconstitutional: (1) there was no probable cause supporting the collection of cell phone data dating back to January 2017—eight months before the capuchin monkey was born; (2) the warrant lacks particularity because it does not specify the crimes Defendant Hammonds allegedly committed; and (3) the warrant lacks particularity because it does not adequately describe the items to be seized from his cell phone. Dkt. 32 at 8–9.

The Court rejects Defendant Hammonds' first argument. Although the affidavits largely focus on the capuchin monkey seized at Chris Brown's residence, the affidavits also allege that Defendant Hammonds engaged in a series of wildlife-trafficking conspiracies over the course of several years. For example, Lt. Gonzalez stated he had probable cause to believe Defendant Hammonds illegally

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981.

9

transferred a spider monkey to rapper Swae Lee. Dkt. 49 at 17. Additionally, the affidavits allege Defendant Hammonds frequently communicated with Mr. Rashid—a known associate of Chris Brown who allegedly has a history of illegally trafficking capuchin monkeys to celebrities. *Id.* at 17–19. In fact, phone records indicate that Defendant Hammonds and Mr. Rashid spoke on the phone for more than 186 minutes over the course of one year. *Id.* at 18. As such, the judge who issued the search warrant had a substantial basis for concluding that a search of Defendant Hammonds' cell phone data from January 2017 onward would uncover evidence of wrongdoing. *See Illinois v. Gates*, 462 U.S. 213, 236 (1983) (cleaned up). This Court must afford "great deference" to such determinations of probable cause. *United States v. Leon*, 468 U.S. 897, 914 (1984).

    Defendant Hammonds' second argument is not successful either. The affidavits supporting the search warrant identify several crimes and regulations that Defendant Hammonds allegedly violated, including the federal Lacey Act and fish and wildlife laws in California and Florida. Dkt. 49 at 12, 17–18 (referencing Cal. Fish & G. Code § 2118; Cal. Code Regs., tit. 14, § 671; and Cal. Penal Code § 182, among other laws). The search warrant refers to the two affidavits several times. For example, the warrant states that Defendant Hammonds' cell phone contained "evidence of a crime as prescribed in the Affidavits" and that "the facts set forth in said Affidavits show and constitute probable cause for the issuance of this

10

warrant." Dkt. 49 at 1–2. Moreover, the affidavits were attached to the warrant application. This is enough under Eleventh Circuit precedent. *See United States v. Martinelli*, 454 F.3d 1300, 1308 (11th Cir. 2006) ("When affidavits are attached to a warrant, we will consider the affiant's statements in determining whether the warrant sufficiently identifies the crimes that were allegedly committed."); *see also Wuagneux*, 683 F.2d at 1350 n.6 (noting that, while courts typically look at both incorporation and attachment of extrinsic documents to a warrant, "[t]hese criteria have not been applied rigidly in every case," and case law mandates "a more flexible approach"); *United States v. Hamilton*, 591 F.3d 1017, 1028–29 (8th Cir. 2010) (holding that, even if words of incorporation were less than clear, it was objectively reasonable for law enforcement officers to rely on warrant).

The third argument also fails. Defendant Hammonds is correct that the search warrant lists several categories of phone data that officers could examine. Dkt. 49 at 1–2 (listing communications data, location data, photographic and video data, internet history, and financial information). But Lt. Gonzalez and Investigator O'Horo explained how these categories of phone data could contain evidence of Defendant Hammonds' alleged crimes, as well as how individuals involved in the illegal trafficking of monkeys routinely utilize these phone applications to effectuate their crimes. Additionally, the phone records showed Defendant Hammonds used his cell phone to communicate with suspected co-conspirators,

11

including Mr. Rashid and Mr. Ortiz—two known associates of Chris Brown who authorities believe are linked to the illegal transportation of the capuchin monkey. The affidavits therefore established a sufficient nexus between the searchable categories of phone data and Defendant Hammonds' suspected illegal wildlife trafficking, and there was probable cause to believe this type of phone data contained evidence of Defendant Hammonds' alleged crimes. *See United States v. Hodivsky*, Case No. 19-00080-KD-N, 2019 WL 2571248, at *3 (S.D. Fla. June 21, 2019) (holding that search warrant was not overbroad even though it failed to specify which areas of the phone authorities could search).

### B. Even If The Search Warrant Is Unconstitutional, The Cell Phone Evidence Should Still Be Admitted Under The Good Faith Exception To The Exclusionary Rule.

Even if evidence is obtained in violation of the Fourth Amendment, such evidence is not always subject to exclusion. *See Davis v. United States*, 564 U.S. 229, 236 (2011); *see also United States v. Nicholson*, Case No. 19-11669, 2022 WL 203409, at *8 (11th Cir. Jan. 24, 2022). The exclusionary rule is "a prudential doctrine created by the Supreme Court to compel respect for the constitutional guaranty" and "deter future Fourth Amendment violations." *United States v. Smith*, 741 F.3d 1211, 1218 (11th Cir. 2013) (cleaned up) (quoting *Davis*, 564 U.S. at 236). In other words, "[s]uppression is not an automatic consequence of a Fourth Amendment violation," but rather a "last resort, justified *only* where the deterrence

benefits of suppression outweigh the substantial social costs of ignoring the reliable, trustworthy evidence bearing on guilt or innocence." *Id*. at 1218–19 (cleaned up). Thus, when officers act with "an objectively reasonable good faith belief that their conduct is lawful"—i.e., by acting in reasonable reliance on a warrant—the exclusionary rule does not apply because there is little, if any, deterrence benefit in such circumstances. *Davis*, 564 U.S. at 238–39; *see also Leon*, 468 U.S. at 918–22; *United States v. Taylor*, 935 F.3d 1279, 1289–90 (11th Cir. 2019). This is known as the good faith exception to the exclusionary rule.

There are only four scenarios in which the good faith exception does not apply: (1) the judge issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) the judge wholly abandoned their detached and neutral judicial role; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) the warrant was so facially deficient that a reasonable officer could not have believed it to be valid. *Leon*, 468 U.S. at 914–15; *United States v. Robinson*, 336 F.3d 1293, 1296 (11th Cir. 2003). Whether these circumstances apply depends on the totality of circumstances surrounding issuance of the warrant. *United States v. Sigouin*, 494 F. Supp. 3d 1252, 1267 (S.D. Fla. 2019).

The Court holds that, even if the search warrant lacks probable cause or sufficient particularity as Defendant Hammonds contends, the cell phone evidence

13

should still be admitted under the good faith exception to the exclusionary rule. The officers acted in reasonable reliance on a search warrant issued by a neutral magistrate judge. There was no reason for the officers to believe the search warrant was invalid under the Fourth Amendment. The warrant was supported by two affidavits that spelled out why there was probable cause to suspect Defendant Hammonds engaged in the illegal trafficking of monkeys. The affidavits further explained how Defendant Hammonds' cell phone could contain evidence of the alleged crimes. Because the officers reasonably relied on the search warrant, little to no deterrent effect would flow from excluding the cell phone evidence. *See United States v. Green*, 981 F.3d 945, 958 (11th Cir. 2020) (finding that the exclusion of evidence would create little to no deterrent effect because officers reasonably relied on state-court orders).

    None of the four scenarios that negate the good faith exception are present here. There is no evidence the affidavits were deliberately or recklessly false, and Defendant Hammonds does not argue such.[3] There is no evidence the issuing judge failed to act in a neutral and detached manner. Furthermore, the affidavits provide sufficient probable cause such that an officer could reasonably rely on them. For example, the affidavits explain that Chris Brown possessed a capuchin monkey, that Defendant Hammonds cashed a check from Christopher Brown for $12,650

---

[3] In fact, Defendant Hammonds does not address the good faith exception at all in his motion.

weeks after the capuchin monkey was born, and that Defendant Hammonds communicated with Mr. Rashid—a known associate of Chris Brown who allegedly has a history of illegal wildlife transportation—several times near the monkey's birth and the days after authorities seized the monkey from Chris Brown. This is sufficient to support the state judge's decision to issue the search warrant.

In sum, there is no evidence that the authorities exhibited deliberate, reckless, or grossly negligent disregard for Defendant Hammonds' Fourth Amendment rights. *See Nicholson*, 2022 WL 203409, at *8 (holding that the exclusionary rule requires deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, as opposed to merely negligent conduct). Even if the warrant lacked probable cause or sufficient particularity—which it does not—the cell phone evidence should still be admitted under the good faith exception to the exclusionary rule. The Court denies Defendant Hammonds' Motion to Suppress.

## II.     The Motion To Compel Is Denied As Moot.

Defendant Hammonds seeks to compel the testimony of Lt. Matt Gonzalez from the California Department of Fish and Wildlife to support his suppression argument at an evidentiary hearing. However, the Court holds that no evidentiary hearing is needed because the Motion to Suppress is denied. The Court therefore denies as moot Defendant Hammonds' Motion to Compel.

## CONCLUSION

The Court **DENIES** Defendant Hammonds' Motion to Suppress, Dkt. 32, and **DENIES AS MOOT** his Motion to Compel, Dkt. 40.

**DONE AND ORDERED** at Tampa, Florida, on January 26, 2022.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record