UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                               CASE NO. 8:20-cr-401-WFJ-AAS

JIMMY WAYNE HAMMONDS
a/k/a "The Monkey Whisperer"

### UNITED STATES' SENTENCING MEMORANDUM

The United States files this sentencing memorandum requesting a sentence within the applicable Guidelines range and requests that this Court sentence defendant Jimmy Wayne Hammonds to a term of 15 months' imprisonment followed by 3 years' supervised release and impose a fine of at least $50,000 based on Hammonds' ability to pay.

I. **Background**

a. **Offense Conduct**

From at least from September 2017 through February 2018, Hammonds conspired to engage in conduct involving the sale and purchase of a capuchin monkey, knowing that the capuchin monkey had been possessed and transported in violation of state law, all in violation of the Lacey Act. The ultimate object of the conspiracy was for Hammonds to sell a capuchin monkey to a buyer in California, who could not lawfully possess a capuchin monkey in California.

Beginning in September 2017, Hammonds arranged via cell phone the sale and

transportation of the capuchin monkey with an associate of the California buyer. At Hammonds' request, the California buyer deposited $12,650 in the Hammonds' bank account to pay for the capuchin monkey and associated expenses, including delivery. Hammonds transferred the capuchin monkey, within Florida, to a wildlife transporter that Hammonds knew was not permitted to possess a capuchin monkey in Florida. That wildlife transporter met with the California buyer's associate in Nevada, after which the wildlife transporter and the associate traveled into California with the capuchin monkey. Neither the wildlife transporter nor the California buyer's associate were permitted to possess a capuchin monkey in California. After receiving the capuchin monkey, the California buyer unlawfully possessed the capuchin monkey until January 3, 2018, when law enforcement officers seized the capuchin monkey from the buyer's California residence. All of these acts were part of and in furtherance of the conspiracy.

Hammonds and his conspirators also attempted to conceal aspects of the unlawful scheme. For example, on February 15, 2018, Hammonds submitted false records to a law enforcement officer investigating the unlawful transaction. These records falsely stated that the capuchin monkey had been sold to a different individual in Nevada, where it was legal to possess a capuchin monkey, rather than to the California buyer.

In addition, on multiple occasions, Hammonds sold cotton-top tamarins, which are listed as an endangered species, across state lines and in violation of the

Endangered Species Act. On March 10, 2016, Hammonds sold a cotton-top tamarin to an individual residing in Wisconsin for $4,500. On April 7, 2017, Hammonds sold a cotton-top tamarin to an individual residing in Alabama for $4,500. On October 24, 2017, Hammonds sold two cotton-top tamarins to an individual residing in South Carolina for $9,000 (plus approximately $1,200 for transportation). Because Hammonds conducted this business from Florida, and the cotton-top tamarins crossed state lines in their transport from Florida to their destination states, all of these transactions were in interstate commerce.

Hammonds sought to conceal his unlawful trade in endangered species by telling his purchasers to falsely claim that they had received the cotton-top tamarins at a flea market when asked. For example, on August 12, 2020, after the South Carolina buyer told Hammonds that law enforcement officers had contacted her about her purchase of cotton-top tamarins, Hammonds told the South Carolina buyer to tell the officers that she had bought the cotton-top tamarins at a flea market and that they had later died. In truth, however, the South Carolina buyer had purchased the cotton-top tamarins from Hammonds, and she had later returned those cotton-top tamarins to Hammonds.

 b. **Procedural History**

In December 2020, a grand jury in the Middle District of Florida charged Hammonds with having conspired to violate the Lacey Act, in violation of 18 U.S.C. § 371, Lacy Act Trafficking, in violation of 16 U.S.C. §§ 3372(a)(2) and 3373(d)(1)(B)

and 18 U.S.C. § 2, Lacey Act False Record, in violation of 16 U.S.C. §§ 3372(d)(2) and 3373(d)(3)(A)(ii), and 18 U.S.C. § 2, two violations of the Endangered Species Act, in violation of 16 U.S.C. §§ 1538(a)(1), 1540(b)(1) and 18 U.S.C. § 2, and witness tampering, in violation of 18 U.S.C. § 1512(b)(3). Doc. 1. Hammonds pleaded guilty pursuant to a plea agreement on March 2, 2022. Docs. 59, 60. Hammonds' sentencing is scheduled for June 8, 2022. Doc. 72.

  II. <u>**Presentence Investigation Report**</u>

On May 17, 2022, probation issued its Final Presentence Investigation Report ("PSR") as to the defendant. Doc. 68. Pursuant to the PSR, Hammonds' applicable Guidelines range for the underlying offense is 12 months to 18 months; he is a criminal history category I; and the applicable period of supervised release is one to three years. *Id*. at ¶¶ 111, 116. Hammonds has one objection to the information stated in the PSR. Doc. 68. at 27-28.

  III. <u>**Argument for Guidelines Sentence**</u>

The facts of this case and the defendant's conduct are pervasive and demand a sentence within the applicable Guidelines range. A sentence of 15 months' imprisonment followed by three years' supervised release is necessary due to the nature and circumstances of the offense, to promote respect for the law, provide just punishment for the offense, afford adequate deterrence of these crimes, and for the protection of the public against the defendant. *See* 18 U.S.C. § 3553(a). The United States recognizes that a sentencing court may not presume that a sentence within the

advisory guideline range is reasonable; however, the Guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in § 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). A consideration of these factors warrants a sentence within the defendant's Guidelines range.

### a. Nature and Circumstances of the Offense

For years, Hammonds ran a monkey breeding business, The Monkey Whisperer, LLC. In addition to licensed money breeding activities, Hammonds frequently sold monkeys on the black market. This case springs from Hammonds' unlawful sales of endangered or otherwise regulated monkeys across the country. Hammonds engaged in illicit business practices or schemes that involved a pattern of

repeated illegal conduct. As part of that scheme, Hammonds conspired to import restricted monkey species into California in August and October of 2017. Hammonds regularly violated Florida law in his business practices when he provided false statements and false business records during Florida Fish and Wildlife Conservation Commission ("FFWCC") inspections of his business, and for having transferred a capuchin monkey to an unlicensed transporter.

The investigation into Hammonds' conduct stemmed from multiple, independent information sources indicating that he was involved in unlawful wildlife trafficking. One source was an investigation by the California Department of Fish and Wildlife ("CDFW") and the FFWCC, centering on a 2017 sale of a capuchin monkey to a California-based celebrity. *See* Doc. 1 (Counts One and Two). Another independent source of information came from an August 2017 tip submitted by Hammonds' competitor. The tip stated that Hammonds had unlawfully sold cotton-top tamarin monkeys to purchasers in Wisconsin and Alabama. A subsequent investigation corroborated these allegations, including interviews with the purchasers themselves. *See* Doc. 1 (Counts Three and Four).

As part of the investigation, the FFWCC obtained a warrant to search Hammonds' phone from a state judge in Manatee County, Florida.[1] In September

---

[1] Florida Administrative Code 68A-6.008(2) makes it unlawful to "to buy, sell, or transfer any wildlife to or from an unpermitted entity within Florida." California Code of Regulations § 671 and California Fish and Game Code § 2118 make it unlawful to import, transport, or possess listed categories of animals (including primates) without a permit.

2018, law enforcement officers searched Hammonds' phone and seized evidence pursuant to that warrant from the phone's "notes" application.[2] Those records led, in part, to the investigation of an additional unlawful sale to an individual in South Carolina, whom Hammonds later encouraged in a recorded call to lie to law-enforcement officers. *See* Doc. 1 (Counts Fix and Six).

Through the years, Hammonds profited significantly form his illicit wildlife sale/transfers. The data extracted from Hammonds' cellphone revealed that he kept financial information from his black-market monkey transactions, in the "notes application", occurring between 2013 to September 26, 2018 (the notes seem to have been systematically and contemporaneously recorded).[3] Hammonds detailed accounting of his business documented all sales and business income, including the number of sales per month, the type of animal sold, and monthly and yearly sale totals. For example, they detailed a half-dozen sales of capuchin monkeys in 2017 alone. They also described links to other illicit or possibly illicit transactions with associates of Hammonds and their associates (often friends or relatives), stretching back to 2013 and 2014—even providing specific facts corroborating those links.

Hammonds' earnings as documented in what appear to be contemporaneously

---

[2] The United States has not attached the Cellebrite "notes" extraction from Hammonds' phone because it might contain private or sensitive information. The United States will file the extraction under seal as Attachment A.

[3] This category of documents appears to be the sole probative evidence seized from Hammonds' phone. A Cellebrite Extraction Report produced in discovery captures all "notes" data stretching back to 2013. But, to date, investigators have not relied on records before January 2017 to further the investigation. Hammonds' motion does not specifically identify what evidence he deems at issue. Doc. 32.

recorded transactions and financial information involving monkey sales—some of which turned out to be illicit transactions—are significant. Specifically, Hammonds documented his yearly earnings for 2013 – 2018 as follows:

- 2013 - $76,107
- 2014 - $148,566
- 2015 - $265,312
- 2016 - $252,267
- 2017 - $250,470
- 2018 - $241,039 (as of August 2018).

*See* Attachment A at 11, line 73. In addition to amassing significant income from his business, Hammonds has acquired multiple residential properties, valued at a total of approximately $934,700, since 2011. *See* PSR ¶ 108.

### b. History and Characteristics of the Defendant

Hammonds has engaged in a long-standing pattern and practice of illicit wildlife trafficking. In 2012, Hammonds was criminally charged for an unlawful sale/transfer of a marmoset monkey and providing false information on an application for license or permit. *See* Attachment B.[4] According to law enforcement reports, Hammonds sold a marmoset monkey to a buyer in May 2012 for $2,500. Attachment B at 2. The buyer did not possess a personal pet license issued by the FFWC as required. *Id*. The buyer

---

[4] The United States will file the law enforcement reports under seal as Attachment B.

reported the sale to FFWC after she was bit by the monkey and Hammonds refused to refund the sale. *Id*. The buyer reported that Hammonds completed FFWC paperwork in her name and she signed the document as directed by Hammonds during the sale. *Id*. The buyer stated that she did not know what the documents were for, but Hammonds had advised he would mail them to FFWC in Tallahassee because it was required. *Id*. The FFWC took possession of the marmoset monkey and transferred ownership to a licensed facility. Attachment B at 2. FFWC made contact with Hammonds at his business in St. Petersburg. *Id*. at 3. Hammonds admitted to selling and transferring ownership of the marmoset to the buyer even though the individual was not permitted to possess the animal at the time of the sale. *Id*. Hammonds further admitted he knew the sale and transfer to the unpermitted buyer was a violation. *Id*. Hammonds told FFWC investigators that he had personally completed the buyer's permit application and mailed it to FFWC after obtaining the buyer's signature. *Id*.

Further investigation revealed that Hammonds was a repeat offender. Attachment B at 3. He had engaged in the same illegal conduct on at least six prior FFWC applications within the preceding six months. *Id*. FFWC issued Hammonds' a citation/notice to appear, charging him with unlawful sale/transfer of wildlife to an unpermitted entity or individual, in violation of Florida Administrative Code 68A-6.0023(7); and knowingly entering or allowing to enter false information on an application for a license or permit, and doing so for a wrongful purpose, in violation of Fla. Stat. 379.3504. *Id*. Hammonds pleaded no contest and was adjudicated guilty

and ordered to pay a fine in June 2012. PSR ¶ 64.

### c. Need to Promote Respect for the Law and Need to Afford Adequate Deterrence

As demonstrated from Hammonds' criminal history as described in the PSR and outlined above, there is a need for the sentence imposed in this case to promote respect for the law and to provide adequate deterrence to criminal conduct. In addition to being prosecuted for similar conduct years ago, Hammonds boldly obstructed justice throughout this investigation. He lied to law enforcement officers, provided false business records, and encouraged witnesses and unindicted co-conspirators to lie to law enforcement officers. *See* PSR ¶ 39. Specifically, in August 2020, FFWC agents conducted a recorded phone call between Hammonds and one of his buyers. The buyer told Hammonds that law enforcement officers had approached the buyer seeking information about cotton-top tamarin monkeys the buyer had illegally purchased from Hammonds. Hammonds told the buyer to "just stick with the story." The buyer explained to law enforcement officers that Hammonds had told her to say that she bought the monkeys at a flea market and then they died. Hammonds eventually told the buyer to say that she had bought them at a flea market, and they later died. During the recorded call, Hammonds also encouraged the buyer to have her attorney send law enforcement officers a "scare letter," requesting that they cease and desist bothering her, which Hammonds stated he's had his attorney do that in the past. Hammonds repeatedly stated during the call that law enforcement officers don't have any evidence against her and that he had beaten the FFWC before.

### d. Need to Protect the Public from Further Crimes of the Defendant

There is a strong need to protect the public from further crimes of the defendant. Hammonds has a long history of exploiting and trafficking endangered wildlife. Hammonds' pattern of illicit business practices, especially in light of his prior criminal history, is evidence of his recidivism. Hammonds has demonstrated no signs of changing his unscrupulous and illegal business scheme and he continues to pose serious danger to wildlife that have been deemed to be protected species in society.

## IV. Request for Court Ordered Fine

The Court must impose a fine unless the defendant can demonstrate that he is unable to pay. *See United States v. McGuinness*, 451 F.3d 1302, 1307 (11th Cir. 2006); USSG §5E1.2(a). Hammonds pleaded guilty to one count of conspiracy to violate the Lacey Act, in violation of 18 U.S.C. § 371, and three counts of violations of the Endangered Species Act, in violation of 16 U.S.C. § 1538(a)(1) and 16 U.S.C. § 1540(b)(1). *See* Docs. 60, 63. The Guidelines range for the defendant's fine is $5,500 to $55,000. PSR ¶ 122; USSG §5E1.2(c)(3). The statutory maximum fine is $250,000. PSR ¶ 122; 18 U.S.C. § 3571(b).

Hammond has the ability to pay a fine within the guideline range. The PSR identifies that he owns four pieces of real property, none of which are encumbered by a mortgage. PSR ¶ 108. His estimated net worth is $941,485.39. *Id*. The net worth approximated in the PSR is also based on very low estimates as to his properties' values, which may actually be significantly higher in light of current market

conditions. However, even considering these estimated property values, Hammonds' net worth is significant. The PSR agrees that the Hammonds has the ability to pay a fine. PSR ¶ 107. There will be no restitution in this case. PSR ¶¶ at 124, 125.

In determining the amount of fine to impose, this Court shall consider, among other factors, the expected cost to the government of any term of probation or term of imprisonment and term of supervised release imposed. USSG § 5E1.2(d)(7) and 18 U.S.C. § 3572(a)(6). Hammonds' Guidelines range of imprisonment is 12 to 18 months. PSR ¶ 110. The PSR estimates that the annual cost of Hammonds' imprisonment is $44,258, or $3,688 per month. PSR ¶ 95. Based on this, if Hammonds is sentenced to the guideline imprisonment term, the cost of imprisonment alone would range from $44,256 to $66,384. Additionally, there will be costs associated with his supervision. The annual cost for supervised release is $4,454 per year. PSR ¶ 116.

Additionally, payment of a fine would not unduly burden dependents. *See* 18 U.S.C. § 3572(a)(2); USSG §5E1.2(d)(3). The defendant is currently married, but he has no minor dependents. PSR ¶ 82. His available assets greatly exceed the fine range for his offense.

Another consideration in determining the fine is the amount of restitution ordered. *See* 18 U.S.C. § 3572(a)(4). Priority would be given to compensating any victims prior to imposing a fine. In this case, there will be no restitution ordered and the Court can consider the full amount of his assets. The fact that restitution will not be ordered does not detract from the seriousness of the offense. *See* USSG §5E1.2(d)(1).

As highlighted above, Hammonds made significant financial gains based on his sustained illicit wildlife trafficking activities.

Based on the foregoing and the Hammonds' substantial resources, there is no reason to waive imposition of the statutory fine. In light of his net worth, four unencumbered real properties, the seriousness of his offenses, and the costs to the taxpayers associated with his offense (for imprisonment and for supervision), the United States requests that this Court order Hammonds pay a fine of at least $50,000.

## V.     Conclusion

Hammonds' history shows that he has been engaged in illicit wildlife trafficking for his own financial benefit for years. Hammonds' sentence should fairly account for the scope of his criminal endeavors, acknowledge the harm that he has caused to endangered wildlife, and acknowledge the ramifications of his actions. For the aforementioned reasons, the United States respectfully requests that this Court issue a sentence within Hammonds' applicable Guidelines range, followed by a term of

supervised release and order a fine based on his ability to pay.

                                         Respectfully submitted,

                                         ROGER B. HANDBERG
                                         United States Attorney

By:   */s/ Lisa M. Thelwell*
       Lisa M. Thelwell
       Assistant United States Attorney
       Florida Bar No. 100809
       400 N. Tampa Street, Suite 3200
       Tampa, Florida 33602-4798
       Telephone:  (813) 274-6000
       Facsimile:   (813) 274-6358
       E-mail: lisa.thelwell@usdoj.gov

U.S. v. Hammonds                                Case No. 8:20-cr-401-WFJ-AAS

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Gary Ostrow, Esq.

/s/ Lisa M. Thelwell
Lisa M. Thelwell
Assistant United States Attorney
Florida Bar No. 100809
400 N. Tampa Street, Ste. 3200
Tampa, FL 33602
Phone: (813) 274-6000
Fax: (813) 274-6103
Email: lisa.thelwell@usdoj.gov